Our next case is Alergan, et al. v. MSN Laboratories and Sun Pharmaceuticals, 2024-1061. Good morning, Mr. Dittman. Please proceed. May it please the Court. With regard to obviousist-type double patenting, the question presented is whether that doctrine's boundaries should be expanded to allow later-issued continuation to serve as a reference patent against the first-issued patent in the family. What's the rule of select? The rule of select is that a PTA is not immune from double patenting. This Court decided that issue and also decided that the fact that there is no gainsmanship does not mean that equitable considerations can override a double patenting problem. This Court did not address the issue of what is a proper reference patent in that case because the patentee never raised that issue on appeal. But this is different, isn't it? This is not like any of the patents or continuations that we have and collect in the sense that here the patent that's involved set the priority date. Correct. The patent in this case... ...and was the first filed patent that set the priority date and the first issued patent. And that factual situation was not involved in collect, right? You are correct, Judge Dyke. The first filed first-issued patent in select was the 255 patent, which didn't have a PTA but was not at issue in this Court's decision in select. What about the language in select regarding the patents there being patently indistinguishable? Yes, there was language in select about that neither select nor the PTO disputes that there were obvious variations amongst the reference patent, at least the alleged reference patent in that case and the challenge patents. But also there was no dispute about the reference patent status. And that's at page 1229 of the select opinion. How is that different from this case? In this case, the reference patent being alleged is a later filed, later issued continuation being asserted against the original period of excessivity, which is determined by the first filed first-issued patent. Select did not address those facts and it raises a different set of concerns, namely that Section 101 authorizes a patent for an invention. And this Court has interpreted this to mean that a patent is entitled to one full original period of excessivity, but that any later filed patent that extends that original term can be invalid for double patenting. And this is, for example, the Abbey case at pages 1372 to 73. Here, the first filed first-issued 356 patent sets the original period of excessivity and thus cannot be invalid for double patent. So is this case an outlier or is Select an outlier? Or is this an exception to Select? I would view this case as an attempted expansion of the boundaries of double patenting. I think Select decided that PTAs, of course, need to be considered in terms of the expiration dates of the patents at issue, but it didn't decide. You need a proper reference patent. In this case presented squarely, you cannot have a reference patent being a later filed, later issued continuation against the original first filed first-issued patent. So explain those boundaries that are being expanded here. Yes. No precedent of this Court has taken what is indisputably the original period of excessivity set by the first filed first-issued patent and said that that excessivity is curtailed. So why is that important? That's important because Section 101 of the Supreme Court has explained in cases like Miller v. Eagle that the point of double patenting is to ensure the public has the right to use the invention at the expiration of the term specified in the original grant. In this ad venosus language on page 1372 of its opinion, and for that reason, the Court explained that, quote, the ban on double patenting ensures that the public gets the benefit of the invention after the original period of monopoly expires. That's page 1373. That's the 356 patent. Does that mean that that has some form of adverse effect on terminal disclaimers and use of terminal disclaimers here? Well, when you're talking about the original period of excessivity, there is no other patent for which a disclaimer could be filed. In this case, when the 356 patent issued, the continuations weren't even in existence. You couldn't have filed a disclaimer up until patent expiration. Is that correct? You can file a disclaimer, but the point is here that there's no need for one when you have the original period of excessivity and one was not even available to be filed when the patent issued, which the Supreme Court in return mail and other cases had said patent invalidity is judged at inception. At the outset of the 356 patent's issuance, there was no other patent in the family by which a terminal disclaimer could even be filed. In other words, your client did nothing to extend its monopoly. Correct, Your Honor. Which was the point of double patenting. Correct, Your Honor. Now, I would also want to... Do you want to switch to the Glidant? Yes, Your Honor. Turning to written description, our brief set out the legal and clear factual errors in the district court's ruling. So in the time I have available today, I want to focus on one particular error. The district court relied solely on inference to find that, quote, that using a Glidant in a formulation would be a signal that it was necessary in order to achieve sufficient flow properties unless noted otherwise. This is at Appendix 19. And the district court received extrinsic evidence that Glidants are sometimes necessary to achieve flow. It noted that all exemplary embodiments in the patents had Glidants and thus inferred that Glidants were necessary to the invention claimed. But the claim said, what, optional, which includes with Glidants, but not with Glidants. And your problem is that there are no examples without Glidants, right? Yes. Well, Claim 26 doesn't even discuss Glidants at all. Some of the representative claims, such as Claim 7 of the 179, includes Glidant optional language. No, but there are no examples in the spec formulations without Glidants, right? There are no working embodiments, exemplary embodiments that expressly do not have a Glidant. But the summary of the disclosure, for example. Well, expressly or not, there is no example. Your honor is correct. There is no exemplary embodiment. Yes. But the Glidants are optional and they're inert, right? Now, they indicated the Glidant is colloidal silica, right? In that one example, yes, colloidal silica. I'm looking at Column 4 of the 179 patent. And it refers to these as inert ingredients. Yes, and Column 4 is important, your honor. If you look at, for example, lines 55 to 62, it talks about you can have an oral tablet formulation comprising Eluxadiline and an inert ingredient, and then lists five possibilities of what this ingredient could be, only one of which is a Glidant. So the summary of the disclosure may explain that the invention does not require a Glidant. And this is also consistent with the original claims. As they were filed in the original application, they also did not require the presence of a Glidant. So really the core of the error here by the district court is that extrinsic evidence was the basis by which to infer the need for a Glidant, simply because it's an exemplary embodiment and that it sometimes. Extrinsic evidence is how to read the specification. That happens all the time, right? Yes, but the basis, what was the unreasonable inference that the district court made here is that because Glidants are sometimes needed, and because I see it in the exemplary embodiments, that means there must be, Glidants have to provide sufficient flow. And that's the problem here is the specification never even mentions sufficient flow. Nowhere is it even discussed, let alone does the specification ever say that Glidants are required. So there's nothing in the specification, which is what really governs a written description analysis, that says there must be a Glidant. Examples alone aren't enough to limit the invention. And here the claims do not require a Glidant. There's no dispute that the remaining ingredients are. You have expert testimony reading the specification saying we would read this as requiring a Glidant. There is expert testimony to that extent, but there's nothing rooted in the specification, which is what controls. Certainly, extrinsic evidence, of course, can be considered, and we don't dispute that. But there has to be something in the specification that makes clear to Reposa that a Glidant is clearly required. And here, again, the basis for the district court's inference was on it's needed for flow. Whether flow is preferred for commercial tablets and may be preferable in some circumstance doesn't mean it's required for these claims, which are simply directed to pharmaceutical tablets and nothing more. They are about as simple of a formulation claim as you can imagine. It's got four ingredients and specified amounts. That's all this claim requires. And that, we submit, is amply supported by the specification. And I would also say that it's made further clear, if you look at column 12, lines 47 to 54, that also discusses the possibility of having one or more ingredients, and we think that's another of three places, the summary of disclosure, the pre-formulation embodiment in column 12, and also, as importantly, the original claims do not limit the formulations to requiring Glidant. Your Honor, at this point, unless you have further questions, I'd like to save the remainder of my time for rebuttal. We will save it for you. Mr. Klein. Good morning. May it please the Court. The Patent Act grants one patent term per invention. Plaintiffs want two patent terms for the same invention. Well, they filed one patent application. They got, without asking for it, an extension, and then it expired. They didn't do anything further to extend their monopoly. Isn't that the evil against which type of patenting rejections are intended? Well, two responses, Your Honor. First, they did do something. They made a strategic decision to file continuation applications for patently indistinct claims. That was a decision. No one forced them to do that. But they expired first. That's exactly right. And the original term, the first term to expire, is the term that expires next March. Then plaintiffs now want another 15 months of patent term for the exact same invention. It's admittedly patentably indistinct. And as this Court held in select, what essentially that does is it takes the PTA from the first filed patent and applies it to the two patents that expire next year. And that isn't proper. That violates Section 101, which is the heart of the obviousness-type double patenting statute. So just to be clear, this fact situation where the patent sets the priority date and it's the first file and the first issue was not a situation that existed in the Collect case, right? That is correct, yes. Now, the Collect or Select, I don't know how you pronounce it, case involved earlier filed, earlier issued patents. But the issue resolved in that decision was the PTA question. But what we do have and what's made clear in Gilead is issuance dates don't matter. What matters is you compare the expiration dates. Why? To find out the issuance dates. Go ahead. The reason, and Gilead makes this clear, is you compare the two expiration dates to see if the patentee is getting two patent terms for the same invention. Because Section 101 says you get a patent term. And what plaintiffs are asking for is a judicial safe harbor for the first filed, first issued patent that would allow them to have two patent terms for the same invention. That's what they're asking for.  No. Okay. And there is a statutory safe harbor. When Congress wants to create a safe harbor to Section 101, it did so in Section 121. But Section 121 does not exempt first filed, first issued patents from the double patenting inquiry. And that's critically important because the double patenting, it may be an equitable doctrine, but it's rooted in Section 101. It's got a statutory root. So if Congress wants to create a safe harbor, Congress can do that. But the court shouldn't create a safe harbor for first filed, first issued patents that is inconsistent with Section 101, which says you get one patent term per invention. And that's what they're asking for. They're admittedly seeking two patent terms for the same invention. Well, the issue date doesn't count so much since patent term now extends from the filing date. So for double patenting purposes, what counts is expiration, extension of monopoly, right? That's exactly our point. And if you look at the two expiration dates. They didn't extend the time, the expiration date, from beyond what the first filed application gave them. That's true, but they are extending the expiration date of the two Elix Adelie patents that expire next March. They want an additional 15 months for the same invention. It's admittedly the same invention. They are seeking a new safe harbor. They're asking this court to create a brand new judicial safe harbor for first filed, first issued patents. Gilead said issuing dates don't matter. So the fact that it's a first issued patent, that shouldn't matter. Now, as for first filed, they're referring to the filing of a continuation application, which has never been the focus of inquiry for double patents. The two reference patents and the 356 patent all date back to the same effect. It's filing date. That's the important filing date. And they all have the same filing date. Let's switch to the Glidant. Yes. Which is where the district court spent most of its opinion. Yes. And that's because that's the issue we tried. And written description is a factual inquiry. And Judge Andrews, after a trial, made fact findings. And those findings are entitled to deference under the clear error standard. And the claims here are specific claims to specific pharmaceutical tablets that are not described in the specification. They're not. But the Glidant is a component. This is not a case where we're talking about a broad generic claim encompassing loads of compounds, sometimes defined by function or even by structure, where there's just one or two or a small number of embodiments and examples. This is sort of a small, minor aspect of a composition, the main portion of which is the defined compound, new compound. The active ingredient here, column four of the 179, calls it an inert ingredient. Yes. I believe column four is referring to all of the inactive ingredients as inert ingredient. I don't think that's specific. Well, that includes the Glidant, right? Yes. Yes. The Glidant is one of several inert or inactive ingredients in the formulation that's disclosed as the invention in the specification. What happened here is the original claims from this patent family mirrored the specification. And then during litigation, after plaintiffs learned that Sun's product didn't use one of the ingredients, plaintiffs went to the patent office and then took an ingredient out of the patent claim to try to capture Sun's product. That's what happened here. I don't think they're really going to dispute that. And so what they did is they took an ingredient out of their claim. Glidants were in the claims before they came out. Absolutely. Yes. And the original claims were dropped on the eve of trial because Sun's formulation didn't infringe. So plaintiffs went back to the patent office, took one of the ingredients out of the claims, and now, and at trial, that their main argument was a Glidant. A skilled artisan would know that a Glidant is an optional ingredient. And ironically, plaintiffs were relying heavily on extrinsic evidence at trial to support that. Judge Andrews heard the battle of the experts on whether a Glidant was always optional and ruled in our favor. And there's no basis to find clear error. There's no disclosure. Just to be clear, what the patent does teach is that E-luxadiline was no. And it was clearly obvious to formulate E-luxadiline in a pharmaceutical composition. So the patent says that the inventors discovered specific formulations with unique features. They said different formulations can have very different properties. And then they said, here's, here are the formulations of the President Benjamin, COM 11. And there's a number of required ingredients, and one of them is a Glidant. COLUMN 12 then says you can add other things. Those are optional. It never says a Glidant is optional. And then COM 13 says this is how you prepare the formulations. But the Glidant is silica, right? Yes. It's colloidal silica. Colloidal silica. Colloidal silica. And I don't think there was a dispute. In fact, I know there wasn't a dispute at trial as to what the role of a Glidant was. It's to ensure sufficient flow of the powder. When all these ingredients are mixed together, if they don't flow, then they're not going to form a pharmaceutical tablet, which is a claim element. We're talking about written description. Right. And it says optional. Yes. Right. And there was optional means either or. Correct. And the specification is loaded with eithers, with Glidants. So why doesn't that constitute a written description of a limitation that says optionally? I believe you're referring to Column 4 or maybe the pre-formulation section. As Judge Andrews found, and the Court would have to find clear error, that's just a basic idea for a formulation. It just says combine elixadiline with one or more inert ingredients. And maybe sometimes in Column 4 it lists potential ingredients, but it doesn't say which ingredients to use, to use more than one, how much. It's not until you get to Column 11 where the inventors disclose their invention, the specific formulations that have the unique features, that apparently are different from features from other formulations. And every time, every time the inventors conveyed to a skilled artisan what they possessed, the formulation had a Glidant. That's why the original claims required a Glidant. And the only reason the new claims don't require a Glidant was because plaintiffs went back to the patent office during litigation to take out an ingredient. And there's inventor testimony in the record where the inventor didn't even know that happened. The inventor didn't remember preparing any formulations without a Glidant. There's no evidence that the inventors in this case actually possessed what's claimed in the asserted claims. And it's certainly not disclosed in the specification. And that's what Judge Andrews found after a trial, and his findings are entitled to significant deference. I'd like to make one last point on double patenting, if I would, which is that it's the choice. It's the fact that plaintiffs made a choice. Because I do think this is important, and it's different from the Section 121 Safe Harbor, which requires a restriction from the patent office out of the control of the patentee. You mean they made a choice to file other applications that didn't extend their monopoly? Well, no. They made a choice to file continuation applications for patentably indistinct claims. That was a strategic choice. Which didn't extend their monopoly, which is the evil that the double patenting remedy is intended to deal with. Well, I mean, the evil for double patenting is to have more than one patent term for the same invention. That's the evil. Traditionally, and most often, it's a later file patent. No question about that. But if you go to Section 101, it says you get a patent, one patent term per invention. This Court has said that multiple times. It shouldn't matter if that patent, that first patent term comes from a continuation or it comes from the original patent. Either way, you get one patent term. And here, plaintiffs would have gotten the full patent term of the 356 if they filed continuations for patentably distinct claims. We wouldn't be here. We wouldn't have this argument. They made a strategic decision. They got a benefit. They got more narrow claims to protect their invention, which is the way they put it in their brief. It presumably helps preserve validity, preserve their arguments against a validity challenge. But the downside is that their patents now expire next month. They get the full term. I want to be clear about this. The reference patents are getting their full term. They're not truncated at all. And so what's happening is plaintiffs are at the 356. What are you calling the reference patents? The later patents? The later patents are the reference patents. They did not get PTA, so they expire next month. I'm sorry, next year. The 356 patent expires later solely because of PTA. And as a practical matter, that PTA is now going to be grafted onto those two patents that expire next March, which is what this Court held in select was an ill. So that gets back to the ill. Unless there are further questions, I'll sit down. Thank you. Thank you, counsel. Mr. Dittman has some rebuttal time. To begin with the double patenting issue, we're not asking, of course, for an application of the safe harbor. We're simply asking that this Court's case law be followed requiring that there must be an extension of the original period of exclusivity in order for there to be a double patenting problem. And there was some discussion about expiration dates. They're, of course, relevant, but you need to have a proper reference patent to compare those expiration dates. And as Gilead and other cases have explained, the expiration dates are, of course, determined by the earliest effective filing date. And here, the 356 patent is indisputably the earliest effective filing date. What about the one patent per invention? The one patent per invention per Supreme Court case law that's been confirmed to be relevant by this Court in the post-URA double patenting context is what's been the earliest effective filing date determines that first one period of exclusivity, and that's the one patent that you're entitled to get under the statute. And here, as was noted by the panel's questions, there's been no extension of this original one period that the patentees are entitled to. If anything, there have been later patents that have shorter terms, but that is not an extension of the original period of exclusivity. You could have an extension if we weren't talking about the first issued patent. If the first filed were later issued, you could then have a second continuation patent, which started earlier. There are certainly other scenarios that could raise other considerations, but in this case, we're both first filed, first issued, and first issued. We're as early as you could possibly be emanating from the original application. And I do want to briefly note the Breckenridge case, which I didn't discuss, certainly rejects any sort of wooden application of just looking at expiration dates, albeit a different circumstance. The reasoning of that case, we think, is consistent with the rule that we promulgate and also said that a patentee's choice to file later additional patents is not relevant or dispositive to double patenting. What about the Glidant and FACT findings? So we have a clearly erroneous standard. Yes, and if Your Honor could indulge me one last point, just to mention that, of course, we didn't talk about the statute. There was a mention of Safe Harbor, of course, 154B's guaranteed PTA for diligent applicants pursuing an original application. We addressed that in our brief, so I'll leave it at that. Turning to Your Honor's question about written description, the one thing I do want to address about the factual issues, there was an argument made that the summary of the disclosure or invention was somehow just a basic idea. That is, a patent sets forth a description of the invention. That's a summary of the inventive formulations, and it's not simply a basic idea, and it makes clear that the formulations don't have to have all five ingredients. To Judge Lurie's question, the end or, or an inert ingredient, clearly connotes that you don't have to have all five that are required only in the exemplary embodiments. Claim 26 in particular. And what, that fully satisfies the optional limitation? Correct, Your Honor, it does. And also just to note that, you know, Claim 26, again, it's a comprising claim with very specific ingredients and specific amounts, and it's not a genus. But even if it was thought of as a genus claim, it's properly described by the structural features of the claim that I would immediately connote to oppose all of the formulations that are covered. We have here at most maybe 100 or maybe 1,000 formulations that are all clearly described. They don't have to be set forth in detail in every particular possible embodiment. The exemplary embodiments and their other disclosure is sufficient. And unless there's anything Your Honors have further, that's all I wanted to cover today. Thank you, Mr. Dippin. Thanks to both counsel. The case is taken under advisement. That concludes today's item.